In re TRUMP TAJ MAHAL ASSOCI-
ATES, Trump Taj Mahal, Inc., The
Trump Taj Mahal Corporation, and
Trump Taj Mahal Funding, Inc., Debt-
ors.

TRUMP TAJ MAHAL ASSOCIATES,
et al., Plaintiffs,

v.

Ginan ALIBRAHAM, Rashid Alibraham,
Cynthia Smith, Ann Jordan, Marilyn
Kunkel, Robert W. Matthews, Helen
O'Hara, Eugene O'Hara, Louis J. Picar-
iello, Cynthia Picariello, Rita Newman,
Madelyn Tolerico, Louise McRee and
Earl McRee, Defendants.

Bankruptcy Nos. 91–13321, 91–13325,
91–13351 and 91–13334.
Adv. No. 93–2056.

United States Bankruptcy Court,
D. New Jersey.

July 1, 1993.

Schwartz, Tobia & Stanziale by Jennifer T. Stone, Stephen C. Greene, Montclair, NJ, for debtors.

Carmen R. Faia, Pleasantville, NJ, for Helen O'Hara and Eugene O'Hara.

Law Firm of Barbara Rothenberg by Robert S. Fisher, Jeffrey Nydick, Cherry Hill, NJ, for Ann Jordan.

## OPINION

ROSEMARY GAMBARDELLA, Bankruptcy Judge.

Before this Court is the Second Order to Show Cause Why Defendants Should not be Enjoined from Prosecuting an Action against Debtors Barred by 11 U.S.C. § 362, the Restraining Order Dated July 17, 1991, the Order of Confirmation Dated August 28, 1991 and 11 U.S.C. § 524(a)(3) and for Sanctions Filed by Trump Taj Mahal Associates, Trump Taj Mahal, Inc., the Trump Taj Mahal Corporation, and Trump Taj Mahal. The following constitutes this Court's findings of fact and conclusions of law.

## FACTS

On July 16, 1991, the Trump Taj Mahal Associates and three affiliated debtors, Trump Taj Mahal, Inc., the Trump Taj Mahal Corporation, and Trump Taj Mahal Funding, Inc. (the "Taj" or the "Debtor") filed petitions under Chapter 11 of the Bankruptcy Code. The Debtors operate the Trump Taj Mahal Resort Casino and Hotel in Atlantic City, New Jersey. On August 28, 1991 this Court entered an Order confirming the Debtors' Second Amended Plan of Reorganization.

Prior thereto, on July 17, 1991, this court, *inter alia,* (i) established August 23, 1991 as the deadline for filing Proofs of Claim against the debtor, the Trump Taj Mahal Associates (the "Bar Date"); and (ii) allowed notice of the Bar Date by publication (the "Bar Date Order"). Pursuant to the Bar Date Order, notice of the Bar Date was published in the following newspapers:

(a) The New York Times, National Edition

(b) The Wall Street Journal, National Edition

(c) The Newark Star Ledger

(d) The Atlantic City Press

(e) The Philadelphia Inquirer

*See* July 17, 1991 Order.

The Bar Date Order further provided, in relevant part:

[A]ll persons ... holding or wishing to assert claims as defined in 11 U.S.C. § 101(5) against the Debtors ... are required to file *on or before* 5:00 pm Camden, New Jersey Time on August 23, 1991 (the "Bar Date"), a separate completed and executed proof of claim form....

[A]ny of the Creditors ... who is required but fails to file a proof of claim ... shall be forever barred, estopped and enjoined from asserting such claim....

[P]ursuant to Bankruptcy Rule 2002(a)(8) ... notice ... shall be deemed good and sufficient notice to known and unknown Creditors if the Debtors cause the Notice: (a) to be mailed on or before July 23, 1991 to all creditors ... and (b) to be

published once during each of three (3) consecutive weeks commencing on or before July 23, 1991 in the national edition of each of the New York Times and The Wall Street Journal as well as in the Atlantic City Press, The Star Ledger and Philadelphia Inquirer....

*See* Order Pursuant to Bankruptcy Rule 3003(c)(3) Setting a Final Date for Filing of Certain Proofs of Claim and Interests.

The Taj alleges that the defendants, Ann Jordan, and Helen O'Hara and Eugene O'Hara have violated the automatic stay.

Defendants O'Hara and Jordan have filed answers to the complaints and separate motions seeking an order permitting these parties to file Proofs of Claim out of time or declaring the Proofs of Claim timely filed.

### Jordan

On November 18, 1990, Ann Jordan was a pedestrian lawfully on the premises of the Taj. She allegedly fell as a result of a dangerous and defective condition. Jordan claims that, as a result of the fall, she sustained serious and diverse personal injuries. Shortly after her fall, Jordan gave the Taj notice of her accident and claim.

On February 13, 1991, the Taj acknowledged this notice through the following letter addressed to her then attorney Allen L. Rothenberg, Esq.:

February 13, 1991

Lois Dimitri, Paralegal
ALLEN L. ROTHENBERG, ESQUIRE
1518 Walnut Street
18TH Floor, Rothenberg Tower
Philadelphia, PA 19102

Re: Your Client: Ann Jordan
D/I: 11–18–90
Our Claim #: 5500525

Dear Ms. Dimitri:

This is to acknowledge your letter regarding your above mentioned client, we would like to conclude this claim in an expedient manner.

Please give us copies of all medical specials received to date, including a narrative report from the treating physician.

Very truly yours,

Jay B. Baver
Claims Adjuster
Risk Management

---

*See* Brief of Robert S. Fisher, filed March 3, 1993, Exh. "C" (hereinafter "Jordan Brief"). In response to this letter, Jordan's counsel forwarded a complete package of special damages and the theory of liability. At that time the Taj and Jordan entered into settlement negotiations. The parties, however, failed to reach a settlement.

On August 7, 1992, Jordan filed suit against the Taj in the New Jersey Superior Court, Atlantic County (the "State Court Action"). In that suit, Jordan is represented by Robert S. Fisher, Esq., of the law office of Barbara Rothenberg. On October 22, 1992, the debtor, represented by Horn, Goldberg, Gorny, Daniels, Paarz, Plackter and Weiss, filed an answer to Jordan's State Court Action. The parties have apparently actively litigated this matter. Jor-

dan alleges that discovery is virtually complete.

On September 14, 1992, Mr. Fisher received a letter from the Taj asking Jordan to voluntarily withdraw her action because she had failed to comply with the Bar Date Order. Jordan admits that she received notice of the Bar Date Order, but she believes that she received it after the Bar Date. Moreover, Jordan argues that, as a lay person, she was unaware of the legal consequences of failing to file a timely Proof of Claim. Upon receipt of the September 14, 1992 letter, Mr. Fisher immediately filed a Proof of Claim. *See* Jordan Brief, Exh. "B".

Jordan requests that this court employ its equitable powers to allow Jordan to file a late Proof of Claim. Moreover, she argues that the Taj will not suffer appreciable prejudice if she is allowed to file a late Proof of Claim because the Taj was aware of her claims prepetition.

*O'Hara*

Helen O'Hara, an elderly woman, was allegedly injured on August 23, 1990 at the Taj. On the same day, the O'Haras filed a report of the accident with a security guard or other representative of the Taj. The O'Haras, therefore, conclude that the Taj had due notice and knowledge of the accident and injury. *See* Certification of Carmen R. Faia, Esq. in Opposition to Plaintiff's Second Order to Show Cause, filed February 17, 1993, para. 2 (hereinafter "Faia cert.").

Mrs. O'Hara was transported to Burdette Tomlin Memorial Hospital, where she was treated for her injuries. *See* Reply Brief, filed March 12, 1993 (hereinafter "O'Hara Reply"). In a letter dated October 12, 1990, Jay Baver, a Claims Adjuster for the Taj sent Mrs. O'Hara the following· letter:

I am in receipt of our incident report outlining your unpleasant experience mentioned above.

In an effort to confirm your patronage is valuable, we are willing to· consider paying your out-of-pocket medical bills associated with this matter as well as addi-

tional compensation for distress. In order for us to do so we will need copies of all medical bills and the doctors [sic] evaluation of your injury. Upon receipt of the above requested information we will contact you again.

On behalf of Trump Taj Mahal we apologize for this incident and hope it will not keep you from visiting us again.

*See* Response of Reorganized Debtors in Opposition to Notice of Motion of Helen O'Hara and Eugene O'Hara to Grant an Extension of Time Within Which to File a Proof of Claim, filed March 8, 1993, Exh. "A". The O'Haras apparently failed to reply to this letter. *Id.*

Carmen R. Faia, Esq. represents the O'Haras. On August 21, 1992, the O'Haras filed a Complaint in the Superior Court of New Jersey, Law Division, Atlantic County, seeking damages as a result of the alleged injuries suffered by Mrs. O'Hara at the Taj on August 23, 1990. The Sheriff of Atlantic County apparently properly served the Complaint on the Taj. *See* Faia cert., para. 3–4.

On October 7, 1992, Mr. Faia received a letter dated October 5, 1992, from Nicholas F. Moles, Esq., Senior Vice President of Law at the Taj. In that letter, Mr. Moles stated:

We are in receipt of a Summons and Complaint in the Caption matter.

Please be advised that on or about July 16, 1991, Petitions in Bankruptcy were filed by [the Debtor]. On July 17, 1991, an Order Pursuant to Bankruptcy Rule 3003(c)(3) Setting a Final Date for Filing Certain Proofs of Claim and Interests was entered, which, among other things, bars Claimants from asserting any claim or interest against the Debtor. For your reference, a copy of said Order is attached.

Notice of the bar date, in addition to being forwarded to all claimants of whom we had knowledge, was published. in various newspapers of general circulation, including *The Star Ledger, The New York Times, The Wall Street Jour-*

*nal, Philadelphia Inquirer* and *The Press of Atlantic City.*

There is no record of a proof of claim having been filed on behalf of this claimant and, accordingly, further proceedings in this matter are barred by the provisions of the United States Bankruptcy Code.

Therefore I would request that you voluntarily dismiss the Complaint or I shall have no alternative but to pursue all remedies available to my client in the Federal Bankruptcy Court.

*See* Faia cert., Exh. "A". Mr. Faia asserts that the July 17 Order was not attached.

On October 13, 1992, Mr. Faia responded to Mr. Moles' letter:

I have received your letter dated October 5, 1992 regarding the above matter and reference is made thereto. Please be advised that the letter did not contain the copy of the Order dated July 16, 1991 which you referred to and indicated in the letter was attached. It was not. I would request that you provide me with a copy of that Order by return mail.

Your letter also does not indicate whether or not Trump Taj Mahal Casino has emerged from the bankruptcy action. If the bankruptcy action has been concluded, then I believe I am entitled to pursue the pending litigation in the Superior Court, since the O'Hara claim was not litigated, resolved or in any manner disposed of by the bankruptcy action. If Mrs. O'Hara was not a creditor in the bankruptcy proceeding, then the bankruptcy action does not affect her substantive rights.

If the bankruptcy action is still pending, then please advise and forward copies of the bankruptcy petition and other pleadings which have been filed. I will seek to move before the bankruptcy court to file a proof of claim at this time, it the action is still pending.

*See* Faia cert., para. 5 and Exh. "B".

The Taj responded through the following letter from Peter M. Sarkos, Esq. of the law firm of Horn, Goldberg, Gorny, Daniels, Paarz, Plackter & Weiss:

Please be advised that I have been assigned the handling of the above captioned matter on behalf of our firm. Kindly direct all future questions and/or correspondence relating to same to my attention. My direct telephone number is shown above for your convenience in contact [sic] me.

I note that on October 5, 1992 representatives of the Taj Mahal Casino advised you that a Proof of Claim was not filed with respect to the above captioned matter. As such, kindly advise at to whether you will be voluntarily dismissing the Complaint.

*See* Faia cert., para. 6 and Exh. "C". Mr. Faia received Mr. Sarkos' letter on November 5, 1992. On that day, he forwarded a copy of his October 13, 1992 letter along with the following letter:

Thank you for your letter of October 30, 1992 regarding the above matter. I have enclosed for your review a copy of the letter dated October 13, 1992 which I forwarded to Mr. Moles of the Trump Taj Mahal Casino. As of this date, I have still not received a copy of the bankruptcy petition or other pleadings which were filed in the matter. I am also of the belief that if Mrs. O'Hara was not listed as a creditor in the bankruptcy proceedings, then the bankruptcy action does not affect her substantive rights.

Please provide me with the bankruptcy petition and pleadings which would establish whether or not Mrs. O'Hara was named as a creditor in the bankruptcy action.

Additionally, I would note that the Complaint set forth a number of John Does defendants. These John Doe defendants would be individuals who owned, operated, leased, maintained, controlled, constructed, designed, supervised or repaired the premises known as the Trump Taj Mahal Casino Resort. This would include the general contractor for the site and the subcontractors who installed the floor and/or carpeting in the area where Mrs. O'Hara fell. The information regarding who these individuals or entities are would be within your posses-

sion. Therefore, I would request that you provide me with this additional information so that I may substitute those individuals as direct defendants for the previously designated John Doe's [sic].

See Faia cert., para. 7 and Exh. "D".

On December 3, 1992, Mr. Faia received the following letter from Mr. Sarkos, dated November 25, 1992:

I am in receipt of your correspondence dated November 5, 1992. With respect to such, please be advised that I am not in possession of any pleadings with respect to the bankruptcy petition. I have been assigned to handle this personal injury matter in the event that your claim is not expunged by way of Motion of bankruptcy counsel. I have corresponded with bankruptcy counsel for the Taj Mahal and have requested that he provide me with the return date of the Motion, once one has been set.

Furthermore, in reference to your information on various John Does, I note that I have no information on my file with respect to the happening of this accident. If you would like for me to provide you with the requested information, you will need to provide me with more information as it pertains to the area in which the accident occurred. Once I am in receipt of this information, I would be more than happy to attempt to obtain information with respect to the identities of the various John Does.

In the meantime, if you should have any questions or comments regarding any of the above, please do not hesitate to contact me. Thank you for your anticipated attention and courtesies.

See Faia cert., para. 8 and Exh. "E".

Mr. Faia states that he responded immediately to Mr. Sarkos' November 25, 1992 letter. On December 4, 1992, he sent the following letter to Mr. Sarkos:

I received your letter of November 25, 1992 on December 3, 1992 and reference is made thereto. I have requested copies of the bankruptcy pleadings from both your office and Mr. Mole's. I have not received anything in response to that request to date. If you are relying upon the bankruptcy action, then I believe it would be appropriate to provide me with copies of the documents I have requested.

I will attempt to describe the area of the accident for you as best I can in words. The area in question was a ridge beneath the carpet under the first archway after leaving the casino floor, across from the Rock & Roll Diner. The accident occurred on August 23, 1990 at approximately 2:00 p.m. There was a security guard named Sydney on duty at the time. Therefore, there should be a security report regarding this incident within your client's possession.

Please advise me if you will provide me with the information as to the John Doe defendant's [sic]. This would include the name and address of the general contractor for the site where the accident occurred, and any subcontractors who installed the floor and/or carpeting in the area where the accident occurred. If you are unable to identify the area from the above description, then please contact me and I will be more than happy to meed you at the Trump Taj Mahal Casino to identify specifically the area where the accident occurred.

See Faia cert., para. 9 and Exh. "F".

On December 28, 1992, Mr. Faia received the following letter dated December 23, 1992 from Mr. Sarkos:

I am in receipt of your correspondence supplying additional information relative to your request for the names and addresses of the general contractors as well as the subcontractors involved in that area of the accident. I have corresponded with the Risk Manager at the Taj Mahal and have requested that he supply me with the information.

I have also requested that he supply me with the bankruptcy pleadings which were also the subject of your request. Once I am in receipt of same, I will forward [them] to your attention immediately.

In the meantime, should you have any questions or comments, please do not

hesitate to contact me. Thank your for your anticipated attention and courtesies. *See* Faia cert., para. 10 and Exh. "G".

Mr. Faia alleges that he never received the requested bankruptcy pleadings. However, on February 4, 1993, he received the Taj's Second Order to Show Cause, now before this court.

By a Certification dated June 1, 1993 Helen O'Hara asserts:

1. I was injured at the Trump Taj Mahal on August 23, 1990.
2. I do not read the legal section of the newspaper.
3. I did not read the legal section of the newspaper that the Trump Taj Mahal had filed for bankruptcy nor did I read in the legal section of the newspaper that there was a "bar date" for filing a proof of claim.

O'Hara asserts that since October 7, 1992, her attorney has been attempting to file a Proof of Claim. The Taj's attorneys, however, have failed to provide her with the bankruptcy documents. She argues that she has tried to file a Proof of Claim and that her failure to do so constitutes excusable neglect. *See* Faia cert., paras. 12–14.

The Taj asserts that, upon receipt of the above-mentioned lawsuits, the Taj sent each of the plaintiffs correspondence advising them that the Taj had filed for bankruptcy and that there was no record of a Proof of Claim filed on their behalf. The letter also asked that the plaintiffs voluntarily dismiss the Complaint. Notwithstanding this notification, the Taj alleges that the plaintiffs have continued to prosecute their lawsuits and have not dismissed their actions.

Moreover, with respect to O'Hara, the Taj argues that, because of the nature of the casino business, hotels in Atlantic City receive hundreds, if not thousands, of such reports weekly. However, only a small portion follow through with a formal complaint. The Taj argues that it is unrealistic to suppose that every person who files such a "report" with the Taj will in turn institute a civil claim against the hotel and

that neither O'Hara nor her counsel followed through with any affirmative action indicating the existence of a claim against the Debtor.

Moreover, neither the O'Haras nor their attorney apparently responded to Mr. Baver's October 12, 1990 letter requesting all medical bills and the doctors' evaluation of Mrs. O'Hara's injury. They did not contact the Taj until October 1992, when they served their Complaint.

As a result of the defendants' alleged violation of the automatic stay, the Taj argues that it has suffered and continues to suffer irreparable harm in that it is being deprived of the benefits of its Chapter 11 discharge, and the equitable Orders of this Bankruptcy Court. In addition, the Taj argues that it has suffered damages as a result of incurring legal fees, costs and other expenses in defending this litigation. At the February 17, 1993 hearing, however, the Taj withdrew its request for sanctions against the defendants.

On April 4, 1988, after a hearing, this court delivered an oral opinion which (1) granted the Taj's Second Order to Show Cause Why Defendants Should not be Enjoined from Prosecuting an Action against Debtors Barred by 11 U.S.C. § 362, the Restraining Order Dated July 17, 1991, the Order of Confirmation Dated August 28, 1991 and 11 U.S.C. § 524(a)(3); (2) declared null and void any complaints concerning prepetition debts filed against the Debtor in the present case after the onset of the automatic stay; (3) enjoined the defendants from further violating this court's previous orders as well as the provisions of the Bankruptcy Code (specifically, this court enjoined the defendants from prosecuting the subject law suits against the debtor, the Taj); and (4) found that these actions are for prepetition claims which are subject to the automatic stay and enjoined by § 524(a)(3).

Before this court entered an order in this case, however, in *Pioneer Invest. Serv. Co. v. Brunswick Assoc.*, —— U.S. ——, ——, 113 S.Ct. 1489, 1492, 123 L.Ed.2d 74 (1993), the United States Supreme Court ad-

dressed the issue of "whether an attorney's inadvertent failure to file a proof of claim within the deadline set by the court can constitute 'excusable neglect' within the meaning of [Rule 9006(b)(1) ]." Therefore, this court declined to enter the two proposed "Orders Permanently Enjoining Defendants From Pursuing Pre–Petition Causes of Action." Instead, this court scheduled a further hearing on the Debtor's Second Amended Order to Show Cause as it relates to defendants O'Hara and Jordan.

## DISCUSSION

### I. Late Proof of Claim

Rule 9006(b) of the Rules of Bankruptcy Procedure states:

(b) Enlargement.

(1) In General. Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefore is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Bankruptcy Rule 3003(c)(3) further provides:

(c) Filing Proof of Claim

* * *

(3) Time for Filing. The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed.

Rule 3003(c)(3) must be read in conjunction with Rule 9006(b). *In re Vertientes, Ltd.*, 845 F.2d 57, 60 (3d Cir.1988) (citing *In re South Atl. Fin. Corp.*, 767 F.2d 814, 817 (11th Cir.1985), *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986)). Under these Rules, the bankruptcy court may allow the filing of an untimely Proof of Claim after the bar date only where the claimant's failure to timely file a Proof of Claim was due to excusable neglect. *Id.* at 60. The decision to allow or deny an untimely Proof of Claim lies within the sound discretion of the bankruptcy court, and the court's decision will be disturbed only upon a showing of an abuse of that discretion. Bankruptcy Rule 3003(c)(3); *In re Vertientes, Ltd.*, 845 F.2d 57 (3d Cir.1988); *In re GAC Corp.*, 681 F.2d 1295 (11th Cir. 1982). Until the United States Supreme Court's decision in *Pioneer Invest.*, the law in the Third Circuit was well settled that the court had no discretion to extend the deadline for filing Proofs of Claim solely for equitable reasons. *Vertientes*, 845 F.2d at 60; *In re Owens*, 67 B.R. 418, 423 (Bankr.E.D.Pa.1986); *see also In re Sharon Steel*, 110 B.R. 205, 207 (Bankr.W.D.Pa. 1990) (quoting *In re Manning*, 4 B.C.D. 304, 305 (Bankr.D.Conn.1978)) (defining "excusable neglect" as "the failure to timely perform a duty due to circumstances beyond the reasonable control of the person whose duty it was to perform."); *In re Figueroa*, 33 B.R. 298, 302 (Bankr.S.D.N.Y. 1983) (finding failure to comply with filing deadline must be due to "something more than ordinary negligence; it must have been something that would not have been prevented by diligence"). The movant carries the burden of proving excusable neglect. *In re STN Enter., Inc.*, 94 B.R. 329, 332 (Bankr.D.Vt.1988).

The well-established law of this Circuit is also that bar dates for filing Proofs of Claim are strictly construed. *Chrysler Motors Corp. v. Schneiderman*, 940 F.2d 911, 912 (3d Cir.1991); *In re Pigott*, 684 F.2d 239, 242 (3d Cir.1982); *In re Owens*, 67 B.R. 418 (Bankr.E.D.Pa.1986). *See also In re W.T. Grant Co.*, 53 B.R. 417, 420 (Bankr.S.D.N.Y.1985) ("[i]n setting a bar date, the court prescribes a statute of limitations which has been characterized as a prohibition and been viewed as peremptory"); *In re O.P.M. Leasing Serv., Inc.*, 48 B.R. 824, 831 (S.D.N.Y.1985) ("[i]t is generally improvident to grant permission to file late Proofs of Claim").

Although the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure do not define "excusable neglect", the United States Supreme Court has found that "[through] Rule 9006(b)(1), Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstance beyond the party's control." *Pioneer Invest.*, —— U.S. at ——, 113 S.Ct. at 1495; and that "the enlargement of prescribed time periods under the 'excusable neglect' standard of Rule 9006(b)(1) is not limited to situations where the failure to timely file is due to circumstances beyond the control of the filer." *Id.* —— U.S. at ——, 113 S.Ct. at 1496.

In so holding, the Supreme Court noted that the "excusable neglect" standard of Rule 9006(c) governs the filing of proofs of claim in Chapter 11 cases, but not in Chapter 7, cases (the latter, governed by Bankruptcy Rule 3002(c)). The Supreme Court stated that:

> [t]he rules' differentiation between Chapter 7 and Chapter 11 filings corresponds with the differing policies of the two Chapters. Whereas the aim of a Chapter 7 liquidation is the prompt closure and distribution of the debtor's estate, Chapter 11 provides for reorganization with the aim of rehabilitating the debtor and avoiding forfeitures by creditors. *See United States v. Whiting Pools, Inc.,* 462 U.S. 198, 203 [103 S.Ct. 2309, 2312–13, 76 L.Ed.2d 515] (1983). In overseeing the latter process, the bankruptcy courts are necessarily entrusted with broad equitable powers to balance the interests of the affected parties, guided by the overriding goal of ensuring the success of the reorganization. *See NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 527–528 [104 S.Ct. 1188, 1196–1197, 79 L.Ed.2d 482] (1984). This context suggests that Rule 9006's allowance for late filings due to "excusable neglect" entails a corresponding equitable inquiry.

*Pioneer Invest.*, —— U.S. at ——, 113 S.Ct. at 1495. When determining whether the claimant has established excusable ne-

glect which would justify its failure to file a timely Proof of Claim, the Supreme Court has held that the determination is an "equitable one" taking into account all relevant circumstances surrounding the parties' omission which includes the following factors: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Pioneer Invest.*, —— U.S. at ——, 113 S.Ct. at 1498; *see also In re Sharon Steel Corp.,* 110 B.R. at 207 (considering (1) the adequacy of the notice provided; (2) the source of the delay and the sophistication of the claimant; and (3) prejudice inuring to the debtor should the untimely claim be allowed); *In re Pettibone Corp.,* 123 B.R. 304, 308 (Bankr.N.D.Ill. 1990) (considering the length of delay and the good faith of the creditor).

## A. The danger of prejudice to the debtor

■ This court finds that the Taj would be prejudiced should the untimely claims be allowed. As will be discussed below, the Debtor adequately notified each defendant of the claims bar date. In turn, the Debtor relied on them to pursue their claims.

On August 28, 1991, this court entered the Order confirming the Debtors' Second Amended Plan of Reorganization. In *Pioneer Invest.*, the debtor had not yet confirmed a plan. Indeed, in that case, "the Bankruptcy Court took judicial notice of the fact that the debtor's second amended plan of reorganization, offered after this litigation was well underway, takes account of the respondents' claims." *Pioneer Invest.*, —— U.S. at ——, 113 S.Ct. at 1499.

If this court were to allow a Proof of Claim to be filed almost two years after the Debtor's confirmation, this court would deny the Debtor the "fresh start" to which it is entitled. Therefore, this court holds that to allow the continuation or institution of causes of action which were discharged

pursuant to the August 28, 1991 Confirmation Order would prejudice the Debtor.

### B. The length of the delay and its potential impact on judicial proceedings

In the instant case, Jordan filed a suit against the Debtor on August 7, 1992, more than one year after the Debtor filed its petition. The O'Haras filed suit against the Debtor on August 21, 1992, again more than one year after the Debtor filed its petition. In *Pioneer Invest.*, the creditor delayed for only twenty days. *Pioneer Invest.*, —— U.S. at ——, 113 S.Ct. at 1492. Therefore, in the instant case, the length of delay is significant.

 Moreover, the potential impact of the delay on judicial proceedings is also significant. The bar date in a Chapter 11 reorganization performs an important purpose; it not only allows the trustee or debtor-in-possession to estimate the debtor's potential liabilities, it is also essential in formulating a viable reorganization plan. Without a final claims deadline, participants in the reorganization process would be hindered by undue caution in their negotiations and in voting on the plan, and, in the instant case, the debtors carrying out the provisions of the confirmed plan. *See In re Arrow Air, Inc.*, 75 B.R. 375, 378 (Bankr.S.D.Fla.1987). In the instant case, allowing Proofs of Claim at this late date, more than one year and almost two years after the confirmation of the plan of reorganization, would undermine the stability of the confirmation process.

### C. The reason for the delay, including whether it was within the reasonable control of the movant

This court finds that the O'Haras and Jordan each received adequate notice.

#### 1. Known Creditors

Jordan here asserts, through a Certification of her attorney, Robert S. Fisher, Esq. as follows:

1. Claimant/defendant, Ann Jordan, acknowledges that she did receive such notice of debtor's bankruptcy, however, claimant/defendant believes that it was not received until well after the bar date set by the Court. Further, defendant, as a lay person, was unaware of the legal consequences of failing to file a proof of claim prior to the bar date.

2. Most significantly, debtor never notified claimant/defendant, Ann Jordan's, legal counsel as to the filing for bankruptcy protection or of the bar date for filing proof of claim until a letter dated September 14, 1992 was forwarded to counsel by debtor, Trump Taj Mahal Assoc., et al., requesting the undersigned to voluntarily withdraw the action pending in the Superior Court of New Jersey, Atlantic County.

3. Despite the knowledge of debtor that claimant/defendant, Ann Jordan, was represented by counsel and the knowledge that claimant/defendant, Ann Jordan, was a lay person and unaware as to the legal consequences of failing to file proof of claim by the bar date, debtor purposefully did not notify claimant/defendant's counsel until after the time for filing proof of claim under the bar date had passed.

4. Immediately upon receipt of debtor's letter of September 14, 1992, a proof of claim was filed with Bankruptcy Court for the District of New Jersey in the above matter. A true and correct copy of said proof of claim filed on September 25, 1992 is attached hereto and marked as Exhibit "B".

*See* Certification of Robert S. Fisher, Esquire at ¶¶ 10–13.

The issue arises here as to whether the defendant Jordan received the notice from the Taj. "Where mail is properly addressed, stamped and deposited in the postal system, there arises a rebuttable presumption that the notice was received by the addressee." *In re STN Enter., Inc.*, 94 B.R. at 334 (citations omitted); *see also Hagner v. United States*, 285 U.S. 427, 430, 52 S.Ct. 417, 418, 76 L.Ed. 861 (1932); *In re Torwico Elec., Inc.* 131 B.R. 561, 573 (Bankr.D.N.J.1991), *amended* (Bankr. D.N.J.1991), *rev'd, in part, vacated, in*

*part, sub nom. Torwico Elec., Inc. v. New Jersey, Dept. of Environmental Protection and Energy,* 153 B.R. 24 (D.N.J.1992).

▉ With respect to the issue of what constitutes sufficient evidence to rebut the presumption of receipt, this court adopts the reasoning in *In re Cresta,* 40 B.R. 953 (Bankr.E.D.Pa.1984). There the court held that "[a] creditor's mere asserting that it did not receive notice of a debtor's bankruptcy proceedings is not sufficient to rebut the presumption of receipt." *Id.* at 955 (citations omitted).

▉ This court also follows the reasoning in *Torwico Elec.,* where the court found that to "the extent that *Yoder* [here citing *In re Yoder Co.* 758 F.2d 1114 (6th Cir.1986)] contains language extending its holding to cases where mailing is proven, it is clearly the minority view, and its reasoning is unpersuasive." *Torwico Elec.,* 131 B.R. at 573 (citing *In re Rickets,* 80 B.R. 495 (9th Cir. BAP 1987)). If a party were permitted to defeat the presumption of receipt of notice resulting from the certificate of mailing by a simple affidavit to the contrary, the scheme of deadlines and bar dates under the Bankruptcy Code would come unraveled.

▉ In the instant case, the Taj has presented credible evidence that on July 26, 1991, it properly sent Jordan a Proof of Claim form that was not returned as nondeliverable. *See* Certification of Christine Hurney Jackson, filed March 9, 1993. The address utilized for Jordan, 188–18 Williamson Avenue; Springfield Gardens, NY 11413, is the same identified in the Proof of Claim filed by Jordan in the instant case. *See* Jordan Brief, Exh. "B". Moreover, Jordan has not supplied evidence that she did not receive the Proof of Claim form. Thus, Jordan has not rebutted the presumption that the notice was received by the addressee.

▉ A creditor is not normally entitled to rely on the debtor's failure to notify its attorney in a case in the absence of an entry of appearance by the creditor's counsel on its behalf. *In re AMWC, Inc.,* 109 B.R. 210, 213 (Bankr.N.D.Tex.1989) (citing

*In re Williams,* 51 B.R. 627 (Bankr. S.D.Ohio 1989)). Jordan's counsel did not file an entry of appearance prior to the bar date.

Thus, this court finds Jordan caused the delay in filing and that a timely filing was within her reasonable control.

### 2. Unknown Creditors

In the case *sub judice,* the O'Haras contend that they were entitled to actual notice of the August 23, 1991 bar date and that the Taj's failure to provide them with such notice warrants a finding that their failure to timely file a Proof of Claim was the result of excusable neglect.

The O'Haras argue that their failure to file a timely Proof of Claim is excusable neglect. In support of this argument, they cite *Bergen–Eastern Corp. v. Koss,* 178 N.J.Super. 42, 427 A.2d 1132 (App.Div. 1981), *cert. granted,* 87 N.J. 351, 434 A.2d 94 (1981), *appeal dismissed,* 88 N.J. 499, 443 A.2d 713 (1981). In *Bergen–Eastern,* the court found that the defendant's failure to apply timely to reopen a foreclosure judgment was excusable neglect because:

(1) she had a history of continuing, serious psychiatric problems with several hospitalizations for mental illness;

(2) the discrepancy between the cost of redemption and the value of the property was large;

(3) she had tendered the full amount of the obligation for taxes, interest, costs and counsel fees; and

(4) no third party had intervened.

*Id.* 178 N.J.Super. at 45–46, 427 A.2d 1132. Because the instant case is distinguishable on the facts, it is not applicable here. Moreover, the instant case requires this court to interpret the Federal Rules of Bankruptcy Procedure. The *Bergen–Eastern* court, however, interpreted New Jersey state law. Therefore, the *Bergen–Eastern* court's holding does not address the issue now before this court.

▉ Due process requires notice that is reasonably calculated, under the circumstances, to apprise an interested party of

the pendency of an action. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). As the Supreme Court stated in *Mullane*, "impracticable and extended searches are not required in the name of due process." *Id.* 339 U.S. at 316–19, 70 S.Ct. at 658–659; *see also In re Charter Co.*, 113 B.R. 725, 728 (M.D.Fla.1990) ("it is not required that a debtor search for those who might have been or might not have been injured"); *In re Brooks Fashion Stores, Inc.*, 124 B.R. 436, 444 (Bankr.S.D.N.Y.1991) ("debtor is not under an affirmative duty to investigate every transaction it has with every entity it deals with to determine whether it owes that entity money").

 A distinction has arisen between "known" creditors, who are entitled to actual notice, and "unknown creditors" for whom constructive notice is all that is required to comport with due process. *See In re GAC Corp.*, 681 F.2d at 1300; *In re Charter Co.*, 113 B.R. at 727–728; *In re Brooks Fashion Stores, Inc.*, 124 B.R. at 444–445. The Supreme Court has held that publication notice satisfied due process for creditors who are not "readily ascertainable." *Tulsa Professional Collection Serv., Inc. v. Pope*, 485 U.S. 478, 490, 108 S.Ct. 1340, 1348, 99 L.Ed.2d 565 (1988); *see also In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 112 B.R. 920 (N.D.Ill.1990) (finding that publication notice in Wall Street Journal regarding applicable bar date was adequate under the Due Process Clause of the United States Constitution where claimants had argued that due to their poor education they had not even heard of the Wall Street Journal).

In *In re Chicago, Rock Island and Pac. R.R. Co.*, 90 B.R. 329 (N.D.Ill.1987), after the bar date, a former employee brought suit on a claim arising from asbestos-related injuries. The employee claimed that he was a known creditor because the company knew its employees were exposed to asbestos. The court held that "in the absence of any indication that a particular claim would ensue," the employee was an unknown creditor and publication notice would suffice. *Id.* at 331.

Unknown creditors have been defined as "those whose identities or claims are not reasonably ascertainable and those creditors who hold only conceivable, conjectural or speculative claims." *In re Thomson McKinnon Sec., Inc.*, 130 B.R. 717, 720 (Bankr.S.D.N.Y.1991) (citing *In re Charter Crude Oil Co.*, 125 B.R. 650, 655 (M.D.Fla. 1991)). The *Charter* court noted that debtors may dispense with actual notice to unknown creditors "provided that the debtor makes 'reasonably diligent efforts' to uncover their identities and claims." *Charter Crude Oil Co.*, 125 B.R. at 655.

 Like the employee in *Rock Island*, the O'Haras were one of several hundred potential claimants. They clearly fall within the *McKinnon Securities* and *Charter* definition of an unknown creditor. As the Taj points out, although many people in O'Hara's position threaten to file suit against the Taj, only a nominal number, if any, actually bring suit. Richard M. Santoro, Vice President of security for the Taj has presented Certification to the Court wherein he states:

> In the past year the Trump Taj Mahal received approximately 1,717 hotel complaint reports and 953 casino reports. These "reports" are the type that Helen and Eugene O'Hara filed with Trump Taj Mahal. Very few reports actually turn out to be complaints asserted against the Trump Taj Mahal.

*See* Certification of Richard M. Santoro, Vice President of security for the Taj, filed March 8, 1993.

Thus, the O'Haras' claim, although conceivable, was speculative and conjectural. Based upon the foregoing, this court finds that the O'Haras were unknown creditors and that publication notice was, therefore, adequate.

 The fact that Helen O'Hara in a Certification to this Court claims that she does not read the legal section of the newspaper and did not read the legal section of the newspaper that published the bar date Order in this case is not controlling. *See In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co., supra*, 112 B.R. 920.

Given the foregoing, this court finds that the O'Haras caused the delay in filing and that a timely filing was within their reasonable control. In sum, this Court finds that the defendants' inaction was the source of the delay.

### D. Whether the movants acted in good faith

This court finds that the defendants have acted in good faith. Although the defendants' actions have caused delay, they do not rise to the level of bad faith.

### E. Ambiguity in the Notice of Bar Date

In *Pioneer Invest.*, the Bankruptcy Court mailed a "Notice for Meeting of Creditors" to the Debtor's creditors. Along with the announcement of a May 5, 1989 creditor's meeting pursuant to § 341(a), the Notice included the following:

> You must file a proof of claim if your claim is scheduled as disputed, contingent or unliquidated, is unlisted or you do not agree with the amount. See 11 U.S.C. Sec. 1111 & Bankruptcy rule 3003. Bar date is August 3, 1989.

*Pioneer Invest.*, —— U.S. at ——, 113 S.Ct. at 1492. The *Pioneer Invest.* court stated:

> In assessing the culpability of respondent's counsel, we give little weight to the fact that counsel was experiencing

upheaval in his law practice at the time of the bar date. We do, however, consider significant that the notice of the bar date provided by the Bankruptcy Court in this case was outside the ordinary course in bankruptcy cases. As the Court of Appeals noted, ordinarily the bar date in a bankruptcy case should be prominently announced and accompanied by an explanation of its significance. *See* [*In re Pioneer Investment Services Co.,*] 943 F.2d [673] at 678 [6th Cir.1991]. We agree with the court that the "peculiar and inconspicuous placement of the bar date, ..." left a "dramatic ambiguity" in the notification. *Ibid.* This is not to say, of course, that respondent's counsel was not remiss in failing to apprehend the notice. To be sure, were there any evidence of prejudice to petitioner or to judicial administration in this case, or any indication at all of bad faith, we could not say that the Bankruptcy Court abused its discretion in declining to find the neglect to be "excusable". In the absence of such a showing, however, we conclude that the unusual form of notice employed in this case requires a finding that the neglect of respondents' counsel was, under all the circumstances, "excusable". *Id.* —— U.S. at ——–——, 113 S.Ct. at 1499–1500.[1]

In the instant case, the separate Bar Date Order provided, in relevant part:

(citing *Link v. Wabash R. Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *United States v. Boyle,* 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985)). Accordingly, the Supreme Court held that in determining whether respondent's failure to file their proofs of claim prior to the bar date was excusable, the proper focus is upon whether the neglect of respondents and their counsel was excusable. *Id.* —— U.S. at ——, 113 S.Ct. at 1499. In assessing the culpability of respondents' counsel, the Supreme Court gave little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the bar date order. (Respondents' counsel had explained that the bar date, of which he was unaware, came at a time when he was experiencing "a major and significant disruption" in his professional life caused by his withdrawal from his former law firm, causing him not to have access to the case file in the matter until several days after the bar date. *Id.* —— U.S. at ——, 113 S.Ct. at 1492).

---

**1.** The Supreme Court in *Pioneer Invest.* disagreed with the Sixth Circuit Court of Appeal's suggestion that it would be inappropriate to penalize respondents for the omissions of their attorney, the Court of Appeals reasoning that "the ultimate responsibility of filing the ... proof[s] of clai[m] rested with [respondents'] counsel." *Id.* —— U.S. at ——, 113 S.Ct. at 1499. The Supreme Court found that the Court of Appeals had erred in appearing to focus its analysis on whether the respondents did all they reasonably could in policing the conduct of their attorney, rather than on whether their attorney, as respondents' agent, did all he reasonably could to comply with the court ordered bar date. *Id.* —— U.S. at ——, 113 S.Ct. at 1499. The Supreme Court noted that in other contexts, it was held that clients must be accountable for the acts and omissions of their attorneys and that that principle applied with equal force here so requiring that respondents be held accountable for the acts and omissions of their chosen counsel. *Id.* —— U.S. at ——, 113 S.Ct. at 1499

[A]ll persons ... holding or wishing to assert claims as defined in 11 U.S.C. § 101(5) against the Debtors ... are required to file *on or before* 5:00 pm Camden, New Jersey Time on August 23, 1991 (the "Bar Date"), a separate completed and executed proof of claim form....

[A]ny of the Creditors ... who is required but fails to file a proof of claim ... shall be forever barred, estopped and enjoined from asserting such claim....

[P]ursuant to Bankruptcy Rule 2002(a)(8) ... notice ... shall be deemed good and sufficient notice to known and unknown Creditors....

*See* Order Dated July 17, 1991 Pursuant to Bankruptcy Rule 3003(c)(3) Setting a Final Date for Filing of Certain Proofs of Claim and Interests. The Bar Date Order in this case clearly sets out the Bar Date and the required procedure and the significance of that Order. Therefore, this Court finds that the Bar Date Order was not ambiguous.

██ The *Pioneer Invest.* court concluded that "were there any evidence of prejudice to petitioner or to judicial administration in this case, or any indication at all of bad faith, we could not say that the Bankruptcy Court abused its discretion in declining to find the neglect to be 'excusable.'" *Id.* — U.S. at ——, 113 S.Ct. at 1500. In the instant case, (1) the late Proofs of Claim would prejudice the Debtor; (2) the length of the delay is significant and would impact adversely on this judicial proceeding; and (3) the defendants caused the delay. Given these findings combined with the finding that the defendants received adequate notice of the Bar Date and that the Bar Date Order was not ambiguous, this court finds that the defendants have failed to establish excusable neglect. For the foregoing reasons this court denies the O'Haras' and Jordan's motions for an order allowing them to file late Proofs of Claim.

### Conclusion

Based on the foregoing, this court grants the Taj's Second Order to Show Cause Why Defendants Should not be Enjoined from Prosecuting an Action against Debtors Barred by 11 U.S.C. § 362, the Restraining Order Dated July 17, 1991, the Order of Confirmation Dated August 28, 1991 and 11 U.S.C. § 524(a)(3).

### II. All Acts Undertaken by Defendants in Violation of the Automatic Stay are void ab initio.

██ In *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1206 (3d Cir.1991), *vacated, reh'g granted* (3d Cir.1992), *aff'd on reh'g* (3d Cir.1992), the Court of Appeals for the Third Circuit held, *inter alia*, that absent relief from the automatic stay, judicial actions and proceedings against the debtor are *void ab initio*. An action that is *void ab initio* is null and without any effect from the beginning. *Black's Law Dictionary*, 6th ed., p. 1574. Therefore, any complaints concerning prepetition debts filed against the Debtor in the present case after the implementation of the automatic stay are declared null and void.

### III. Orders of This Court Bar Continuation of the Complained Actions

The Taj argues that the defendants have taken action in contravention of prior Orders of this Court. The Restraining Order, dated July 17, 1991, and Order of Confirmation, dated August 28, 1991, both specifically bar actions or proceedings against the Debtors. Notwithstanding these Orders, the Defendants continue to attempt to collect prepetition claims against the Debtor.

██ A bankruptcy court may enjoin state court actions brought in contravention of its decrees. *In re Central R.R. of New Jersey*, 38 B.R. 686, 690 (D.N.J.1983). Section 105(a) has been generally interpreted to encompass the power to provide injunctive relief. *In re Management Technology Corp.*, 56 B.R. 337, 339 (Bankr. D.N.J.1985). This power, however, "must and can only be exercised within the confines of the Bankruptcy Code." *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir.1990), *cert. denied, Air Line Pilots Ass'n., Int'l v. Shugrue*, — U.S. ——, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991) (quoting *Norwest Bank Worthington v. Ahlers*, 485

U.S. 197, 206, 108 S.Ct. 963, 968–69, 99 L.Ed.2d 169 (1988)).

■ This court, therefore, enjoins the defendants from further violating this court's previous Orders as well as the provisions of the Bankruptcy Code. Specifically, this court enjoins the defendants from prosecuting the subject law suits against the debtor, the Taj.

### IV. Section 524

■ Section 524 provides in pertinent part:

(a) A discharge in a case under this title—

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and

(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim, that is excepted from discharge under section 523, 1228(a)(1), or 1328(a)(1) of this title, or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.

Although the damages arising from this cause of action may have continued postpetition, the Court finds that the defendants' claims arose prepetition pursuant to § 101.[2] The Debtor filed for relief under Chapter 11 on July 16, 1991, and the defendants' right to payment arose before that date. Consequently, these actions are for prepetition claims which are subject to the automatic stay and enjoined by § 524(a)(3).[3] As noted above, the Debtor's request for sanctions has previously been withdrawn.

An order shall be submitted in accordance with this opinion.

---

**2.** Section 101 of the Bankruptcy Code provides in relevant part:

(5) "claim" means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

**3.** In so ruling, this Court does not reach the issue raised by the Debtor at oral argument as to whether the *Pioneer Invest.* case can be applied retroactively to cases pending prior to the date of that decision.